The next case is Alberto Mendez v. Pamela Pond v. Submitted on the Briefs. The case of Luis Orellano Gonzalez-Warrens v. Pond v. Submitted on the Briefs. The case of Alberto DuPont v. Aurelia Anderson v. Sterling Family Trust v. Submitted on the Briefs. The case of United States v. Isabel Rico v. Submitted on the Briefs. The whole next year argument in Rosa Dennis v. Foster Wheeler Energy Corporation et al. Good morning, Your Honors. May it please the Court. Ted Pelletier here for the plaintiff, Rosa Dennis. I have reserved two minutes for rebuttal, and so in my eight minutes, I'd like to address the Court on the strict liability plan issue, because I think that's the more important one, and that's what we would need to get back to the trial court. And I'm here to ask this Court to send it back for a new trial. And the first thing I'd like to do is just, being relatively new to this case, as you know, I've looked at it, and I think the parties in the briefs framed it a little improperly. This is not a case just about a failure to give an instruction on an existing cause of action, some nuanced instruction about how the jury is to apply the cause of action, but rather this was a dismissal of an entire cause of action after the evidence had come in, effectively granting a directed verdict on strict liability. And so the standard of review should not be something sort of an abuse of discretion, but rather a directed verdict standard of review, given all the evidence in the light most favorable to the plaintiffs. So the jury not have found that the strict liability applied here. And of course it was. What would the evidence be? Because we are guided by the McIndoe case. Yes. And I think this case goes a little bit further than McIndoe. It's a component part. But I think it's uncontested that the component part was built to spec by the Navy. Isn't that right? Yes. There were some specifications. Now, whether those were sufficient enough to meet the government contract of defense, which is an offense that should have been raised or was raised, and that's effectively what this ruling would have been, that's a jury question, and it's not one that the trial court tackled. So I agree with you. This is an extension of McIndoe. And McIndoe, of course, was a case which is really the flip side of this. McIndoe says if you build an entire ship, you shouldn't be responsible for all the products that come onto it. You're not the best party to prevent or warn about that. Unless it's a Kenmore dishwasher, which is all Congress. Correct. Obviously those are very different products. But what McIndoe says, and my colleague, Mr. Hugo, told the trial court I was on that case, and there he argued don't hold the shipbuilder liable for the products that come on. But now here the opposite is what he's arguing, which is don't hold me, the product manufacturer, liable. Hold the shipbuilder, effectively, the Navy. And what he does say and what counsel has said is that this is an extension, as Your Honor said, of McIndoe. And so why should McIndoe be extended to these facts on this case? And defendants offer three arguments, and I'd like to go through them quickly. The first, which you'll see at pages 20 to 21 of their brief, is this is just a really, really big product. It's so big, it's the heartbeat of the ship, so we should consider it to be like the ship. That's not any law that I have seen. And, in fact, if you look at the cases, the plaintiff's side of that breach, East River and Panalaska, those were extremely large products as well. One in East River was the turbines which ran the ship, and Panalaska was the entire engine of like a 72-foot ship. But more importantly, what animated McIndoe, what animated this court in McIndoe was that, in McIndoe it was the shipbuilder, but the product manufacturer was the person who was most able to prevent the harm. And that's what McIndoe said. That picked up on what Judge Lobrano said in the Asbestos MDL four years earlier in Mack, the same thing. He anticipated that, what this court would rule. And so the logic of McIndoe doesn't apply to it just being a very large product. Could I interrupt? Please. I think the question, we're here on a jury instruction, and so the party's going to be entitled to a jury instruction if the law allows the strict liability claim, and if the evidence would support it. Correct. And the question Judge Liberti asked, I think, is what was the evidence that would have supported this? Right. And his question was, it wasn't this product, it's a big component, to be sure. Wasn't it built to spec? And I'm not sure if you're getting around to that, but I know you've lost the thread, and that's what I'm really focused on. I appreciate you asking. No, I'm not focused on a big sweeping change in the law, just whether or not the evidence would have supported this jury instruction. Well, that's right. And any ruling on this either way should be limited to this case, not to a ruling that boilers can never be products on ships. And after I get to you for answering Judge Liberti's question, I'm actually hoping you're going to get back to me. I am, Your Honor. Those were the backstories. I thank Judge Christensen for redirecting me. I appreciate it. Because, you know, as a trial judge, I'm thinking about it in this way. Okay, well, what evidence is there then that can go to the jury on an issue that either wasn't built to spec or maybe there was collaboration between Foster Wheeler and the Navy? You know what I mean? I'm just trying to get that from you. I do, and I appreciate that. And those are the two more reasons which dovetail together that defense counsel has put forward. This was not a commercially available product, and it was specified by the Navy. Really, two different factual reasons they put forward. Neither of those were actually put before the trial judge. No motion was brought on a non-suit or otherwise to show, look, here's all the evidence, Your Honor, and the judge below didn't rule on the evidence but rather said, you know what, it seems like it. It seems like this wasn't commercially available. It seems like there were some specifications. Commercial availability, if you look at page, I believe it's 23 of their briefs, they just say without citing anything, this is not commercially available. What will have the burden to offer the evidence that would have supported the requested jury instruction? Ultimately, it was a question that would have gone to the jury on the specifications the defense did. Because it's the government contractor defense under Boyle, or it may well be the years of the defense. You want a district liability instruction, right? I'm sorry? Your client wanted a district liability instruction. That's right. And one of the component questions on the verdict form would be, did Foster Wheeler manufacture a product? And you're correct. The plaintiff on that issue would bear the burden of proof. But the specification part of it is a defense to that. They did, in fact, build a product, a boiler, which had a defect. We're presuming at this stage because we're deciding whether it was a product or not. And they put that product onto the ship. And now what the defendant is saying and what Your Honor is touching on is, didn't they maybe specify that they had to do it? And what I'm saying is that that's not a mackinac, not a product defense. That's the government contractor defense saying, even though we built a product, we shouldn't be held liable because we meet the three elements of Boyle on government contractor, which is a state law court claim. Or under Yearsley, which I don't think was brought up here, but this court recently did. And it ties into the restatement, though, and the element that it has to be a product in commerce. And if something is custom built, it's not necessarily a product in commerce. Not necessarily. But it's a fact question, Your Honor, here. What they pointed to is just some cross-examination of our experts saying, weren't there specifications? Well, yes, there were. But really what that goes to is, did the Navy make them build some product they weren't going to build otherwise? Our evidence is, and our argument has been, a boiler is a boiler. They all have asbestos at that time. That's the defect in the product. The specifications may have been, use asbestos where you otherwise wouldn't, but we haven't seen any evidence of that. Instead, the specifications, no showing was made on this motion, which was never brought, but the specifications would, they will have been, yeah, you're going to use asbestos like you always do, but make it this thickness, or make it this shape, or that kind of a thing. And those are defense burden questions on the government contractor defense. If you look at the verdict form that actually went to the jury on negligence, it was on there, the government contractor defense, as a affirmative defense brought by the defendant. You're not appealing from the negligence. No, that's right. That's correct, Your Honor. Because it derailed after. It did foster whether to do anything in breach of the duty of care. So the government contractor defense never arose on the verdict form, nor did causation or exposure, which are things that the defendant has urged them on. The saying is we should go back to have a proper hearing, a proper evidentiary hearing on this defense that was raised, which is the government contractor defense under Boyle, or the usually defense in federal maritime law, which effectively is about the same kind of thing, but we never got to that stage. And so circling back to whose burden this was, this is something that was never raised in a motion. So the defense never came and said we're going to move for a directed verdict non-suit. Here's all the evidence, and no reasonable juror could possibly find that this was a product, and every reasonable juror would have to find that would satisfy the government contractor defense. Do you want to save some time for your bill? I do, Your Honor. Yes, I'll reserve the remainder of my time. I thank you for that. Okay. Good morning. I'm Edward Hugo, Hugo Parker for Foster Wheeler, L.A. I'd like to begin my argument following up with counsel's argument regarding the inapplicability of the consumer expectation test, and I want to emphasize a theme here, it's common sense. So let me start with a Navy sailor, because that was the plaintiff in this case, a Navy sailor who is solely trained by the Navy and completely controlled by the Navy, under orders of the Navy to maintain a warship boiler with the required Navy procedures and the required Navy materials. If he is under those orders with the threat of demotion or even imprisonment for failing to follow those orders without question into the letter, that is not an ordinary consumer. And if we apply the filter of common sense now to the warship boiler, we have a warship boiler that is assembled pursuant to mandatory military specifications, never placed in the stream of commerce. It's extremely dangerous and extremely complicated. That is not subject to strict products liability. And to answer the question about burden, it's their cause of action. They have the burden to prove that this product, I'm using that facetiously almost, is subject to the test. They failed, including a failure to show that it was in the stream of commerce. It's just as simple as that. But your position is that they were not entitled to the jury instruction because the evidence didn't support it. 100%. And my question to counsel was what evidence? I guess there was no evidence. Like if there was, like I said, a collaboration, if this item was sold to a private business, I'm sure I would have heard that. Zero, zip, nada, and none. They put on nothing. Absolutely nothing. And don't be confused. I think they did put on actually some evidence since you have seven minutes left. I think they did put on some evidence of some collaboration. There's components and then there's components, right? This is not a Ken Hortons brochure. But I think that goes to Judge Lutherie's first question about whether there wasn't so much collaboration that this was truly something built to spec as opposed to a product regularly introduced. It was 100% built to specifications. And their expert, Arnold Moore, specifically has indicated that every one of the asbestos-containing products associated with the boiler, that's the insulation, the gaskets, and packing, were all specified by the military specifications. Doesn't it work to your client's favor that there's some evidence in the record that there was collaboration with the Navy engineers or naval architects about this particular boiler? Yes. I'm not trying to get you hung up. Is this a trick? I think in response to Judge Lutherie's question, you said there wasn't any collaboration. I think there is some indication in the record of collaboration, and I thought that would have worked to your client's benefit. So I wondered if I missed something there. I think I misspoke or you misheard. I don't believe I said there was no collaboration. Maybe I misheard. I thought that's what you said, but you cleared it up. Thank you. My client is a servant to the government. In other words, the government told my client what to do, and my client cooperated by assembling a product, a Navy warship boiler, not any other boiler that was on that ship. The collaboration, just to follow up on that, it could be your client's expertise saying, well maybe if we do it a little bit differently we could do it more effectively or the part will work better. I'm not necessarily saying that any collaboration whatsoever would go to the jury. And the evidence is that the government specified the products, and this is all on the record, that the government had inspectors at Foster Wheeler's facility to make sure that the products that it purchased were in fact provided by Foster Wheeler, that when the products were shipped to the shipyard the government inspected them, that when the boiler was erected on the ship as it was being built, the government inspectors were there inspecting the boilers, that when the boiler was actually turned on in the receipt trials the government was there. The government was there the entire time, and their expert conceded that if any part of that boiler did not meet the specifications of the Navy, that boiler would not be on the ship. Since I have more time, I'm not going to use it all, but I would like to turn my attention to the unavailability of punitive and non-pecuniary damages. In a maritime case alleging street products liability negligence, we get into the Wayback Machine and go back in time to common law, and we look and see whether those damages were traditionally available or not. The answer is a resounding no. That's practically dispositive of the subject, but pursuant to the requirement of the Supreme Court in Miles v. Apex Marine, we look at the Jones Act to determine whether or not those damages are available. Under those allegations in the Jones Act, they are not. That is dispositive. Those damages are not available. The district courts throughout California are faced with this issue, and my client is, since the pleadings are always the same. Judge Wu ruled correctly here in the Central Court, as did Judge Fitzgerald. Judge Vitaglia in the Southern District ruled the same. More recently, Judge Gilliam and Judge Lynn in the Northern District ruled the same. It is worth the public's decision that those damages are not available under maritime law for cause of action of street products liability and negligence. Why wouldn't we rely on the alternative ruling, which is that the district court reached, where he said the point of punitive damages is retribution, right? It's established a precedent, and there's no outrageous conduct here, and there wouldn't be any deterrent effect because the Navy no longer uses asbestos, and he went on, as you know. I'm reading from ER 6. Why wouldn't that be sufficient rather than reaching this question of law? Because the allegations in cases that come forward thereafter are going to vary in terms of time. There might not be such a time gap. The company may or may not be in business. It may or may not be in business. We don't need to reach that. As a matter of law, non-pecuniary and punitive damages are not available in maritime cases based on allegations of street products liability and negligence, period. We don't typically reach that and make new law in cases where we don't need to is all I'm saying. And the court, that's why I'd like to see if the court relied on both factors, and I think he did. Just let me make sure. Do I have that right? 100%. Okay. But Judge Fitzgerald, Judge Battaglia, Judge Lynn, and Judge Gilliam all made rulings without taking that second step. It was not based on whether or not there was misconduct that needed retribution or there needed to be punishment. It was just as a matter of law, those damages are not available. That's why it's worth your time and effort to publish a decision that clarifies that. Thank you very much. Appreciate the time. Thank you for your argument. You have a little time left for your thoughts. Just a little bit. We don't decide cases on common sense. We decide them on evidence, Your Honors. And to get to Your Honor's point, there was indeed collaboration, and you're right. And if there's a question of fact about that, that's something that should go back, and they can bring a proper motion on the government contract or defense wrong whether this was a product. But they simply said this isn't a product at all. Could you explain to me if we're looking at whether the district court or D.N. not giving the district products liability instruction, I don't understand what collaboration has to do with that. So maybe you could explain. If I understood your question correctly, you're saying, right, His Honor's question about collaboration was? No, but I'm asking you, why does that matter? Well, I believe the reason that collaboration would come in is that their defense is that we had nothing to do with making this product. It wasn't our product. It was the Navy's product. And what I'm saying is? Well, the district product liability question is, is this a product in the District of Commerce? Correct. That's correct. And so has collaboration helped you? I don't understand. It helps because what we're saying is that Foster Wheeler made these kind of boilers all over the place. This is what they made. They made big boilers, sometimes as massive as Navy ship boilers, sometimes smaller. But they all had asbestos on them. They were all very similar. And what was not presented to the trial court below and should be on remand is, what really were those specifications? Not just cross-examining our experts to say, wasn't there a lot of specifications, but rather showing us what those were on that jury question, which, again, was their burden. And so there was collaboration. And so Foster Wheeler said, look, we make a boiler like this. And perhaps the Navy said, well, make it bigger, make it different, make the asbestos thicker. We don't know because the evidence wasn't presented on this direct and verdict motion. But then also, if you look at the direct testimony of Captain Moore, he's talking about warnings. And he says nothing prohibited them from putting warnings on these. In fact, it was in their discretion to do so, that the Navy relied on the manufacturers like Foster Wheeler to warn of special hazards that they knew about. And so they weren't without total discretion. If you look at the years of the case, which is the sort of parallel to the government contract under Boyle, and maritime law talks about was there a total absence of discretion. Did the Navy just say, you have to do exactly this? And more importantly, in this world of strict liability, what they're saying is, we shouldn't be held liable for this because we wouldn't have made this product except the Navy made us do it. And that's not what the case is here, Your Honor. I appreciate the time. Thank you. The case of Dennis versus Foster Wheeler is submitted and we're adjourned for this morning. All rise.
judges: IKUTA, CHRISTEN, Liburdi